**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**NETTIE DUNLAP**                                                                                    **PLAINTIFF**

**V.**                                                    **CIVIL ACTION NO. 4:24-CV-63-MPM-DAS**

**CLEVELAND NURSING AND REHABILITATION**
**CENTER, LLC, KATHY CONROD -EXECUTIVE**
**DIRECTOR AND DAFFANY WILLIAMS- DIRECTOR**
**OF NURSING**                                                                      **DEFENDANTS**

**ORDER**

This cause comes before the court on the motion of plaintiff Nettie Dunlap to remand this

case to the Circuit Court of Bolivar County.  Defendant Cleveland Nursing and Rehabilitation

Center ("Cleveland") has responded in opposition to the motion, and the court, having

considered the memoranda and submissions of the parties, is prepared to rule.

This is a nursing home personal injury action arising out of allegations that defendant

Cleveland negligently allowed plaintiff, who is now deceased, to fall and break her hip at its

nursing home, even though she was a known fall risk.  Plaintiff initially filed this action in

Bolivar County Circuit Court, but defendant removed it based on its contention that diversity of

citizenship exists in this case.  Plaintiff has presently moved to remand, arguing that diversity

jurisdiction is lacking, inasmuch as she and defendants Kathy Conrod and Daffany Williams are

each citizens of Mississippi.  Defendants argue, however, that Conrod and Williams have been

fraudulently joined in this action and that they should accordingly be disregarded for purposes of

determining jurisdiction.

It is well established that the removing party bears the burden of demonstrating that

jurisdiction is proper due to fraudulent joinder. *Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40,

42 (5th Cir. 1992). "The burden of persuasion placed upon those who cry 'fraudulent joinder' is

indeed a heavy one." *Hart v. Bayer Corp.,* 199 F.3d 239, 246 (5th Cir. 2000). There are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse [defendant] in state court." *Travis v. Irby,* 326 F.3d 644, 646–47 (5th Cir. 2003). Rather than a "mere theoretical possibility of recovery," there must "at least be arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder." *Travis,* 326 F.3d at 648 (*citing Badon v. RJR Nabisco Inc.,* 236 F.3d 282, 286 n. 4 (5th Cir. 2000)).

At one time, Fifth Circuit law was quite favorable to defendants seeking to remove cases on the basis of fraudulent joinder, since it routinely permitted them to pierce the pleadings and argue that a claim lacked merit under the factual circumstances of a particular case. In its seminal decision in *Smallwood v. Illinois Central Railroad Co.,* 385 F.3d 568 (5th Cir. 2004), however, the *en banc* Fifth Circuit made it clear that district courts should generally apply a standard of review similar to the Rule 12 dismissal standard, rather than the quasi-summary judgment standard of review that many district courts had applied pre-*Smallwood.* In so concluding, the Fifth Circuit wrote as follows:

> A court may resolve th[is] issue in one of two ways. The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may in its discretion, pierce the pleadings and conduct a summary inquiry.

*Smallwood,* 385 F.3d at 573.

In this court's experience, *Smallwood* has resulted in a dramatic reduction in the number of fraudulent joinder removals in this state, a trend which has put the Fifth Circuit more in line

with other federal circuits. Indeed, E. Farish Percy noted in a 2004 law journal article that, pre-*Smallwood,* the Fifth Circuit saw a dramatically larger number of fraudulent joinder removals than any other federal circuit. *See* E. Farish Percy, *Making a Federal Case of It: Removing Civil Cases to Federal Court Based on Fraudulent Joinder,* 91 Iowa L.Rev. 189, 240 tbl. 1 (2005). This is no longer the case after *Smallwood*, although there are, to be sure, circumstances in which the fraudulent joinder doctrine still finds application, even after that decision.

This court believes that the two non-diverse defendants in this case provide a helpful illustration of the sort of arguments which can (and cannot) serve as a basis for a finding of fraudulent/improper joinder even after *Smallwood*.  In so stating, this court emphasizes that defendant's arguments opposing remand are considerably stronger as to Conrod than as to Williams.  This is because Conrod is sued in her capacity as Cleveland's administrator, and there is well-established Mississippi precedent holding that no common law or statutory duty of care is owed by nursing home administrators to nursing home residents.  *See Howard v. Est. of Harper ex rel. Harper*, 947 So. 2d 854, 860 (Miss. 2006).  *See also Mariner Health Care, Inc. v. Estate of Edwards*, 964 So.2d 1138, 1156 (Miss. 2007) ("nursing home licensees and administrators owe duties to their employers, but [they] owe no common-law or statutory duty to the residents of the home").

It is thus apparent that, under Mississippi law, there is something approaching an absolute bar preventing most negligence claims by nursing home patients and their representatives against nursing home administrators.  In light of this authority, it is not necessary for this court to delve into the factual merits of Dunlap's claims against Conrod, since it is undisputed that she is, in fact, a nursing home administrator, and plaintiff offers no allegations in her complaint which would take this case outside of the scope of the Supreme Court's decision in *Howard*.  This is, in

3

this court's view, an example of the sort of fraudulent joinder argument which may still carry the day even after *Smallwood*.

Once again, however, plaintiff also asserts failure to train and to supervise claims against Williams, in her capacity as Cleveland's director of nursing, and Mississippi law is considerably more receptive to claims such as this one. Indeed, this court notes that Judge Biggers held in two separate orders granting remand that directors of nursing at nursing homes may, in fact, be held liable to patients under Mississippi law, even after *Howard*. For example, in his 2018 ruling in *Franklin v. GGNSC Southaven LLC*, 2018 WL 6204438, at *2 (N.D. Miss. Nov. 27, 2018), Judge Biggers wrote that:

> The Mississippi Supreme Court has expressly distinguished nursing home administrators and licensees from medical professionals like Crump. *See Howard*, 947 So. 2d at 860. Further, Mississippi law recognizes that nursing staff and directors of nursing are held to different standards of care than the standard applicable to corporate officers. *See Mariner Health Care, Inc. v. Estate of Edwards ex rel. Turner*, 964 So.2d 1138, 1156 Miss. 2007). Thus, logic dictates that directors of nursing owe some duty of care to nursing home residents. Moreover, this court has found claims similar to those asserted here against a director of nursing to be potentially viable. *See Matthews v. SMV Property Holdings*, LLC, 2008 WL 5111075, * 2 (N.D. Miss. Dec. 3, 2008) (finding the application of improper joinder unwarranted after concluding that Defendants had not shown that plaintiff had no possibility of recovery against the nursing home's director of nursing).

*Franklin*, 2018 WL 6204438, at *2.

In *Franklin*, Judge Biggers relied partly upon his 2008 decision in *Matthews*, which involved allegations against a director of nursing which were reminiscent of those here. Indeed, as in this case, the defendant in *Matthews* took issue with what it contended was the lack of specificity of the plaintiff's allegations against the director of nursing in that case (Rita Beachum). Judge Biggers nevertheless found the fraudulent/improper joinder doctrine to be inapplicable in *Matthews*, writing that:

> Although it is true that the Complaint does not specifically single out Rita Beachum's allegedly negligent conduct, the term "defendants" includes Ms. Beachum and the

allegations as they pertain to Ms. Beachum, if proven, would apply to her during the period she was involved in Ms. Brown's treatment. In other words, the defendants have not demonstrated that there is no reasonable basis for the court to predict that the plaintiff might be able to recover against Ms. Beachum according to the claims articulated in the Complaint.

*Matthews*, 2008 WL 5111075, at *3.

In this case, Cleveland offers arguments which are virtually identical to those rejected by

Judge Biggers in *Matthews*, writing that:

> The Complaint contains absolutely no specific allegations of tortious conduct by Williams and likewise fails to allege separate and independent tort claims against the non-diverse Defendants. Other than the introduction of the parties in Paragraph 3, Williams is only mentioned in Paragraph 24, where Plaintiff claims Williams (and Conrod) "were responsible for training staff and instituting policies and procedures which would result in proper care for Ms. Dunlap", and that they breached their duty "to use the healthcare knowledge which they possessed, or had reasonable access to, as licensed registered nurses and/or medical/ healthcare personnel."

[Brief at 4]. In its brief, defendant invites this court to delve into the specific facts of this case

and conclude that the allegations against Williams lack merit, but it would be improper for it to

do so at this early stage of the proceedings. In so stating, this court emphasizes that the Federal

Rules of Civil Procedure grant plaintiffs liberal rights to amend their complaints and to develop

proof in support of them during discovery, and, as such, they are not required to have "all the

answers" relating to liability in their initial complaints. This court believes that it would be

particularly harsh to require them to do so in the nursing home litigation context, since the

injured parties in such cases are often either deceased (as here) or lack mental competency to

offer testimony. That being the case, a nursing home has far more information at its disposal

regarding such matters as the training and supervision which it offered to its employees, and it

thus seems unrealistic to expect a plaintiff to have detailed information in this regard even before

she has conducted discovery.

It may well be that the deck is somewhat stacked against defendants in improper joinder cases, but this is, to a large extent, a matter of necessity.  Indeed, it would be quite anomalous and judicially inefficient if courts were required to rule upon the merits of cases at their very outset in order to decide whether they have jurisdiction.  It seems clear that it is partly for this reason that federal jurisdictional law in general relies heavily upon the allegations of the complaint and is hesitant to look behind those allegations.  For example, it is well settled that a "plaintiff is the master of his complaint and may allege only state law causes of action, even when federal remedies might also exist," and, that being the case, a federal question must appear "on the face of the plaintiff's well-pleaded complaint."  *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008).  Given the deference shown to the allegations of the complaint in assessing federal jurisdictional issues, it is unsurprising that, in her law journal article, Ms. Percy's research found the fraudulent/improper joinder doctrine to have been applied very sparingly by district courts nationwide.  *See* Percy, 91 Iowa L.Rev. 189, 240 tbl. 1.  The pre-*Smallwood* Fifth Circuit was an exception to this trend, but that decision has now brought this circuit into alignment with the law of other circuits.

In light of the foregoing, this court concludes that there is, manifestly, a lack of diversity of citizenship between plaintiff and Williams in this case, and there is, as quoted above, Mississippi precedent finding the improper joinder doctrine inapplicable in cases involving allegations which are similar to those against this defendant.  Plaintiff's motion to remand is therefore due to be granted.

It is therefore ordered that plaintiff's motion to remand is granted, and this case is hereby remanded to the Circuit Court of Bolivar County.

This, the 19th day of February, 2025.

   /s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI